Patricia **HARO**; John G. **Balentine**; Jack **McNutt**; and Troy **Hall**, as individuals and as representatives of a class of persons similarly situated, Plaintiffs,

v.

Kathleen **SEBELIUS**, Secretary of United States Department of Health and Human Services, Defendant.

No. CV 09–134 TUC DCB.

United States District Court, D. Arizona.

May 9, 2011.

---

**1180**

Gill Deford, Ctr. for Medicare Advocacy Inc., Willimantic, CT, Sally Hart, Tucson, AZ, for Plaintiffs.

Adam David Kirschner, US Dept. of Justice, Washington, DC, for Defendant.

## ORDER

DAVID C. BURY, District Judge.

Putative class Plaintiffs, Medicare beneficiaries and an attorney representing beneficiaries, challenge the collection practices and procedures employed by Defendant's Center for Medicare & Medicare Services (CMS) program for reimbursement under Medicare as Secondary Payer (MSP) provisions.[1] The questions before the Court are purely legal: 1) whether Defendant can require prepayment of a MSP reimbursement claim before the correct amount is administratively determined where the beneficiary either appeals or seeks a waiver of the MSP reimbursement claim, and 2) whether Defendant can hold plaintiffs-attorneys financially responsible for MSP reimbursement if they do not hold or immediately turn over to Medicare their clients' injury compensation awards. Both questions are answered as a matter

---

1. The Court refers to the Defendant, herein,    as the Secretary.

of statutory construction. The Court does not reach Plaintiffs' due process arguments.

Plaintiffs seek a declaratory judgment that the Secretary's practices are not authorized by Congress, not a permissive interpretation of the statute, and violate the Due Process Clause of the United States Constitution. Plaintiffs seek declaratory judgment and an injunction preventing her from continuing to engage in the challenged practices. Plaintiffs seek class certification for the beneficiaries.

The Court finds the statutory scheme created by Congress for the MSP program precludes the Secretary's practices. The Court grants summary judgment for the Plaintiffs. The Court does not reach the Plaintiffs' due process arguments. The Court certifies the case as a class action for the beneficiaries.

### Standard of Review for Summary Judgment

On summary judgment, the moving party is entitled to judgment as a matter of law if the Court determines that in the record before it there exists "no genuine issue as to material fact." Fed.R.Civ.P. 56(a). In determining whether to grant summary judgment, the Court views the facts and inferences from these facts in the light most favorable to the non-moving party. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 577, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is any factual dispute that might effect the outcome of the case under the governing substantive law. *Id.* at 248, 106 S.Ct. 2505. A factual dispute is genuine if the evidence is such that a reasonable jury could resolve the dispute in favor of the non-moving party. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, but is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party is under no obligation to negate or disprove matters on which the non-moving party bears the burden of proof at trial. *Id.* at 325, 106 S.Ct. 2548. Rather, the moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case. *Id.*

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)). To carry this burden, the party opposing a motion for summary judgment cannot rest upon mere allegations or denials in the pleadings or papers. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Motions for summary judgment are not a disfavored procedural shortcut, but rather are an integral part of the Federal Rules as a whole, which are designed "to secure just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548. Accordingly, the rules governing motions for summary judgment should be enforced with regard not just for rights of the nonmovant, but

also for the rights of the party contending that there exists no genuine issue of material fact. *Id.*

The Judge's role on a motion for summary judgment is not to determine the truth of the matter or to weigh the evidence, or determine credibility, but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. The inquiry mirrors the standard for a directed verdict: whether the evidence presented reveals a factual disagreement requiring submission to a jury or whether evidence is so one sided that one party must prevail as a matter of law.

### Overview: Medicare Secondary Payer (MSP) Recovery Program

The Medicare statutes provide for Medicare to be the secondary payer whenever there is other insurance that covers health care for Medicare beneficiaries, but requires Medicare to make a conditional payment for the care when a primary insurer does not pay promptly. 42 U.S.C. § 1395y(b)(2). Medicare's payment is conditioned on reimbursement before the expiration of 60 days after Medicare receives notice or other information that payment has been or should be made from another source, and the Secretary may charge interest until reimbursement is made. *Id.* She may waive (in whole or part) the reimbursement requirement, if she determines that waiver is in the best interests of the program. 42 U.S.C. § 1395y(b)(2)(B)(v).

The Medicare statute, 42 U.S.C. § 1395ff, also provides for administrative review and appeal rights to beneficiaries to resolve MSP claim disputes.

Plaintiffs challenge the Defendant's 60–day requirement for immediate payment, with interest otherwise accruing, for reimbursement claims when beneficiaries wish to appeal or request a waiver of the reimbursement amount and the use of scare tactics accompanying its pre-decisional reimbursement demands, such as: imposition of exorbitant interest on unpaid claims; threats of cessation of the beneficiary's Social Security or Railroad Retirement payments, and collection referrals to several federal law enforcement agencies.

The Defendant argues that her procedures fully comply with the terms of the statute and fully protect Plaintiffs' due process rights while ensuring the important public interest in the fiscal integrity of Medicare.

"[T]he nature of MSP monies reimbursable to Medicare, as opposed to non-MSP monies to which Medicare is not entitled, is not always discernible with pinpoint accuracy at the time a Medicare beneficiary becomes entitled to a settlement check ... which in whole or in part is meant to encompass medical expenses previously "conditionally" paid by Medicare." *Wall v. Leavitt,* 2008 WL 4737164 *1 (E.D.Cal. 2008). In Plaintiffs' cases, they were injured, received medical services, which were conditionally paid for by Medicare, subsequently received settlement proceeds from a primary payer, i.e., liability insurance company, were notified by Defendant, pursuant to a demand letter, of a reimbursement claim in a specified amount, which each respective plaintiff disputed. The demand letters informed the plaintiffs and plaintiffs-attorneys that the reimbursement claim must be paid within 60 days or interest of 11.375% would begin to accrue and collection actions could be initiated. (P's MSJ at 3–7; D's MSJ at 9–14) Plaintiffs' attorneys were given similar notice, but were additionally told that "Medicare's claim must be paid up front out of settlement proceeds before any distribution occurs." (D's Memorandum in Support of Motion to Dismiss (doc. 16), Ex. 3: letter of 4/18/2007 to Van Osteen (attorney for Plaintiff Haro)), *see also* (P's MSJ at 7–8; D's MSJ at 14–16).

The Secretary submits she has revised the notice given beneficiaries. (D's MSJ, Ex. 31: Attachment E, Bates Stamp (BS) 302–306.) While she has changed the demand for immediate payment from "must pay" to "should pay" the revised notice continues in the same vein as the demand letters sent to the Plaintiffs in this case. First, it obfuscates the effect an appeal or waiver has on "what happens" if the beneficiary does not immediately repay Medicare, *id.* at BS 305, and fails to include language explaining that filing an appeal or waiver will suspend collection activities until agency review results in a final determination and then if the beneficiary "chose to retain the amount in dispute, the Secretary shall collect from the debtor the amount determined to be due, plus interest." *Infra* p. 14 (quoting 45 C.F.R. § 30.18(h)(1)).

Additionally, the paragraph outlining the recovery measures the Secretary may take when a beneficiary does not "repay Medicare in full," is confusing. It has been revised to include language that she will not refer recovery actions to the Department of Treasury for collection, pending administrative or judicial review, but suggests a beneficiary may be subject to other recovery measures and fails to address what happens upon a waiver request. (D's MSJ, Ex. 31: Attachment E at BS 305.)

The Court finds that Plaintiffs' claims are not resolved by the revised notice. Directives to both beneficiaries and attorneys, provided by the Secretary on the Medicare website and in the on-line Medicare Manual correspond to the information challenged by the Plaintiffs contained in the notices distributed to the Plaintiffs in this case. *See* (Motion for Class Certification at 2–5) (describing on-line materials).

**MSP statute: 42 U.S.C. § 1395y(b)(2)**

Congress enacted Medicare in 1965, "a federally funded program of health insurance for the aged, disabled and persons suffering from end-stage renal disease." (Ds' MSJ at 4.) The Secretary of the Department of Health and Human Services is charged with broad authority to "prescribe such regulations as may be necessary to carry out the administration of the insurance programs under this subchapter." *Id.* (citing 42 U.S.C. § 1395hh(a)(1)). She acts through the Administrator of the CMS program.

In 1980, Congress enacted the MSP provisions at issue in this case in an effort to "stem the skyrocketing costs of the Medicare program." *Id.* (citation omitted). The MSP provisions "—require liability and no-fault insurance to be the primary payers for services rendered to Medicare beneficiaries, leaving the Medicare program to provide benefits only as a 'secondary' payer." *Id.* (citation omitted). Two mechanisms protect Medicare funds and ensure that Medicare is the secondary payer.

First, section 1395y(b)(2)(A)(i) prohibits Medicare from making payments for covered medical items and services if payment has already been made or can reasonably be expected to be made by another source with primary payer responsibility. Medicare is directed to not pay benefits when "payment has been made or can reasonably be expected to be made under … an automobile or liability insurance policy or plan (including self insured plan) or under no fault insurance." 42 U.S.C. § 1395y(b)(2)(A)(ii). "A 'primary plan' is 'a group health plan or large group health plan, … and a workers' compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan), or no-fault insurance.… An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance,

or otherwise) in whole or part." 42 U.S.C. § 1395y(b)(2)(A).

Second, any Medicare payment to which subparagraph A, above, applies is conditioned on reimbursement when notice or other information demonstrates that the primary plan has or had a responsibility to make payment with respect to a service or item. This mechanism permits a beneficiary to receive needed medical care, while ensuring that the Medicare Trust Funds will be reimbursed when payment becomes available from another source with primary payment responsibility. (Ds' MSJ at 5) (citation omitted). "Both the Medicare Payer statutory provisions and the applicable regulations require a beneficiary to reimburse Medicare within 60 days of receiving payment from a primary plan." *Id.* (citing 42 U.S.C. § 1395y(b)(2)(B)(ii); 42 C.F.R. § 411.24(h)). Plaintiffs challenge whether this provision authorizes the Secretary to require a beneficiary to reimburse Medicare within 60 days of receiving payment from a primary plan, when the reimbursement claim is disputed by the beneficiary.

Subsection B of section 1395y(b)(2) is captioned: "Repayment required." It is broken into six subsections, as follows: (i) "Authority to make conditional payment"; (ii) "Primary plans"; (iii) "Action by United States"; (iv) "Subrogation rights"; (v) "Waiver of rights," and (vi) "Claims-filing period." The subsections at issue here are (i) through (iii).

Subsection (i) provides generally for the Secretary to make a conditional payment with respect to an item or service if a primary plan has not made or cannot reasonably be expected to make payment promptly.

Subsection (ii), Primary plans, provides as follows:

> A primary plan, and *an entity that receives payment from a primary plan,* shall reimburse the appropriate [Medi-

care] Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service. A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means. If reimbursement is not made to the appropriate Trust Fund before the expiration of the 60–day period that begins on the date notice of, or information related to, a primary plan's responsibility for such payment or other information is received, the Secretary may charge interest (beginning with the date on which the notice or other information is received) on the amount of the reimbursement until reimbursement is made (at a rate determined by the Secretary in accordance with regulations of the Secretary of the Treasury applicable to charges for late payments).

42 U.S.C. § 1395y(b)(2)(B)(ii)(2010) (emphasis added).

Subsection (iii) provides a cause of action to the United States to recover payment against "any and all entities that are or were required or responsible (directly, as an insurer or self-insurer, as a third-party administrator ... or other-wise) to make payment with respect to [a Medicare] item or service ... under a primary plan ... and may in accordance with paragraph (3)(A) collect double damages. In addition, the United States may recover from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity." 42 U.S.C. § 1395y(b)(2)(B)(iii)(2010). The

provision for double damages is expressly included under the statutes enforcement section, 42 U.S.C. § 1395y(b)(3)(A), "in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) . . . ."

The Secretary's regulations provide, "Special rules [ ][i]n the case of liability insurance settlements . . . If Medicare is not reimbursed . . ., the primary payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party." 42 C.F.R. § 411.24(i).

The Ninth Circuit considered the MSP statute, section 1395y(b)(2)(B), in *Zinman v. Shalala,* 67 F.3d 841 (9th Cir.1995), which at that time included only five subsections because today's subsection (i) and (ii) were combined then as subsection (i), and the current subsection (iii) was then subsection (ii) and reached only primary plans," but subsection (ii) in 1995 provided the United States with a cause of action against an entity receiving payment from a primary plan and by regulation the Secretary defined an entity as "a supplier, beneficiary, attorney, State agency, or private insurer." 42 C.F.R. § 411.24(g).

In *Zinman,* Medicare beneficiaries brought an action challenging the interpretation of this statute by the Health and Human Services Secretary (HHS)[2] to allow recovery of an amount equal to the Medicare payment or the amount paid by the third-party primary payer, which ever is less, when beneficiaries' liability settlements are less than their total damages. The court rejected the beneficiaries' argument that the recovery should be reduced proportionately when a beneficiary received a discounted settlement, so for example, if the victim recovered only 25% of her claim, Medicare should recover no more that 25% of its outlay.

The beneficiaries argued that on its face the MSP legislation mandated apportionment rather than full recovery of conditional Medicare payments when there was a discounted settlement. They argued that Congress intended to limit Medicare's right to reimbursement to the extent the beneficiary's settlement actually covered the items or services for which Medicare paid. The court agreed that the statutory references to "items or services" defines Medicare's right to reimbursement, but found nothing in the statute suggesting Congress intended to limit the amount of this recovery. Therefore, Medicare is entitled to full recovery of what it conditionally paid for these items or services.

The beneficiaries argued that subsection iii, now iv, subrogated the United States to the rights of individuals or other entities, putting HHS in the position of the beneficiary in order to recover from third-party primary payers who are legally responsible to the beneficiary for a loss. The right of subrogation is equitable in nature and generally requires application of the equitable principle of apportionment. The court rejected the argument. The court found that the MSP legislation did not confine the right to reimbursement to subrogation, but also provided "an independent right of recovery against any entity that is responsible for payment of or that has received payment for Medicare-related items or services, including the beneficiary herself." *Id.* at 844–45 (citing 42 U.S.C. § 1395y(b)(B)(2)(ii)). Relying on *United States v. Travelers Insur. Co.,* 815 F.Supp. 521, 523 (D.Conn.1992); *Provident Life & Accident Insur. Co. v. United States,* 740 F.Supp. 492, 501 (Tenn.1990), the court found this independent right of recovery to be separate and distinct from the right of

---

**2.** In 1995, HHS served in place of CMS as the program for administering reimbursement under MSP provisions.

subrogation, and not limited by the equitable principle of apportionment. *Id.* at 845. "Moreover, to define Medicare's right to recover its conditional payments solely by reference to its right of subrogation would render superfluous the alternative remedy of the independent right of recovery contained in section 1395y(b)(2)(B)(ii)." *Id.*, *but see In re Dow Corning Corp.*, 250 B.R. 298, 342 (E.D.Mich.2000) (explaining purpose of direct action MSP provision is to circumvent common law rule barring direct tort actions against liability insurers prior to a judgment being entered against the insured tortfeasor).

The *Zinman* court also considered statutory provisions requiring the coordination of benefits, which are not at issue in this case. Concluding that the statute did not address the issue of apportioned recovery either by its language or structure, the court turned to the second step outlined by the Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984): whether HHS's construction of the MSP statute was a permissible one. *Zinman*, 67 F.3d at 843. The court held it was a rational construction of the MSP provisions to allow full reimbursement of conditional Medicare payments, even though the beneficiary receives a discounted settlement because it provides a practical and economical way for Medicare to recover its conditional payments. *Id.* at 845. In the hypothetical case, the injured victim alleged a variety of damages, some capable of precise computation and some not. The court found that allowing the government to recover the full amount of its conditional payments,

regardless of a victim's allegations as to type of damages, avoids the commitment of federal resources to the task of ascertaining the dollar amount of each element of a victims alleged damages. *Id.* It was rational to construe the legislation to permit Medicare to recover up to the full amount of its conditional payments to avoid the difficulty of apportioning damages in the context of tort claims. *Id.*

The court in *Zinman* accepted the undisputed right of the Secretary to seek reimbursement from "a primary plan, and an entity that receives payment from a primary plan." It based its decision on subsection (ii), now subsection (iii), which provided: "the United States may bring an action against any entity which is required or responsible under this subsection to pay with respect to such item or service (or any portion thereof) under a primary plan (and may, in accordance with paragraph (3)(A) collect double damages against that entity), or against any other entity (including any physician or provider) that has received payment from that entity with respect to the item or service, and may join or intervene in any action related to the events that gave rise to the need for the item or service." 42 U.S.C. § 1395y(b)(2)(B)(ii)(1995).[3]

The first clause applies to actions against primary plans and the second clause applies to actions against "any entity that has received payment, directly or indirectly, from a primary plan." The Secretary interpreted the statute broadly to define an "entity" to include: "a supplier, beneficiary, attorney, State agency, or private insurer." 42 C.F.R. § 411.24(g). The

---

**3.** Currently, the statute reads: "... the United States may: 1) bring an action against any or all entities that are or were required or responsible (directly, as an insurer ...) to make payment with respect to [a Medicare] item or service ... under a primary plan ... [and] may, in accordance with paragraph (3)(A) collect double damages against any such entity)" and 2) "may recover from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity." 42 U.S.C. § 1395y(b)(2)(B)(iii)(2010).

court in *Zinman* did not consider whether statutory provisions applicable to a primary plan apply equally to claims against beneficiaries. *Zinman* does not answer the question posed by the Plaintiffs, as to whether the 60–day payment requirement, with interest otherwise accruing, applies to beneficiaries, when there is a disputed reimbursement claim. The Court turns to *Chevron* for the answer.

### Chevron v. Natural Resources Defense Council, Inc.

■ In interpreting a statute, we look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress. *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 830 (9th Cir.1996). Questions are answered by Congress, if it has spoken on the matter. *Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778.

Looking first to the statutory language, the Court considers that the caption to subsection (ii) is expressly limited to "primary payers." *See Almendarez–Torres v. United States*, 523 U.S. 224, 234, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (title of a statute and heading of a section are helpful tools for resolving the meaning of a statute). Before 2003, MSP focused solely on the insurance industry, allowing the government to recover only from primary plans and entities, such as any physician or provider, 42 U.S.C. § 1395y(b)(2)(B)(ii)(2002), and the statute was recognizably narrower than the Secretary's definition adding beneficiaries, attorneys, state agencies, and private insurer, 42 C.F.R. § 411.24(g). Arguably, even by the Secretary's broader definition all were "entities that would be receiving payment from a primary insurer under a claim of right or entitlement to retain it." *United States v. Baxter International, Inc.*, 345 F.3d 866, 906 (11th Cir.2003). The general legal definition of an entity is: "an organi-

zation (such as a business or a governmental unit) that has a legal identity apart from its members," Black's Law Dictionary 573 (8th ed. 2004), and its common meaning is "as an existing thing," Merriam–Webster's Collegiate Dictionary 377 (1979). Unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. *United States v. Maciel-Alcala*, 612 F.3d 1092, 1096 (9th Cir.2010).

While the purpose of the MSP provisions has been generally described as "to ensure the fiscal integrity of Medicare," (D's MSJ at 1, 3) or to reduce Medicare costs, *Zinman*, 67 F.3d at 845, "[t]he courts have uniformly recognized that the MSP statute's clear purpose was to grant the government a right to recover Medicare costs from insurance entities." *In re Silicone Gel Breast Implants Products Liability Litigation (MDL 926), United States v. Baxter International Inc.*, 174 F.Supp.2d 1242, 1253 (Ala.2001), *affirmed in part, reversed in part, Baxter International*, 345 F.3d at 889 (relying on legislative history indicating MSP originated as a device to recoup payments from automobile insurance coverage) (citing *Mason v. American Tobacco Co.*, 212 F.Supp.2d 88, 93 (E.D.N.Y.2002)) (quoting original House bill, H.R.Rep. No. 98–432 at 1803 (1983), *reprinted in* 1984 U.S.C.C.A.N. 697, 1417); *see also In re Dow Corning*, 250 B.R. at 343 (explaining the flip side to protecting the financial integrity of Medicare is to prevent the unjust enrichment of the tortfeasor or its liability insurer at the expense of the government).

Looking specifically at subsection (ii), which contains the 60–day payment and interest provisions challenged by the Plaintiffs, it provides the following directives: 1) a primary plan, and an entity that receives payment from a primary plan, shall reimburse Medicare, 2) if it is

demonstrated that the primary plan has or had responsibility to make payment with respect to a Medicare service or item; 3) primary plan responsibility is demonstrated by a judgment or settlement, "whether or not there is a determination or admission of liability), and 4) if reimbursement is not made within 60 days of Medicare receiving a notice or information related to a primary plan's responsibility for payment, the Secretary may charge interest on the amount of reimbursement from the date of the notice or information until reimbursement is paid.

The MSP also includes a provision whereby a beneficiary may ask for and the Secretary may grant a waiver, in whole or part, of the reimbursement requirement, if she determines that waiver is in the best interests of the program. 42 U.S.C. § 1395y(b)(2)(B)(v).

The Medicare statute, 42 U.S.C. § 1395ff, provides administrative review and appeal rights for beneficiaries to dispute a MSP claim for reimbursement.

In 2003, Congress amended subsection (i) renumbering the subsection captioned "Primary plans" to be subsection (ii) and added the term "entity" to it. Congress also added language to subsection (iii) for actions by the United States against any "or all entities that are or were required or responsible (directly, as an insurer or self-insurer ... to make payment with respect to the same item or service ... under a primary plan." Congress added a definition of a "self-insured plan," which is: "An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part." 42 U.S.C. § 1395y(b)(2)(A).

The combined impact of these changes allows Medicare to recover directly from tortfeasors, something the government had been unsuccessfully attempting to do in

respect to large class action lawsuits involving settlements with Medicare beneficiaries: *Mason v. Am. Tobacco Co.*, 346 F.3d 36, 43 (2nd Cir.2003); *United States v. Philip Morris, Inc.*, 116 F.Supp.2d 131, 145–46 (D.D.C.2000), *In re Orthopedic Bone Screw Products Liability Litigation*, 202 F.R.D. 154, 165 (E.D.Pa.2001); *In re Dow Corning Corp.*, 250 B.R. at 349. The legislative history reflects that Congress focused MSP reimbursement responsibilities on primary-payer plans, which it broadened in 2003 to prevent tortfeasors from settling directly with beneficiaries without reimbursing Medicare.

The 60–day requirement for immediate payment makes sense in respect to a primary plan and self-insurer (tortfeasor) because the government's claim against them is established upon "a judgment or payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." Once there is a judgment or settlement, the primary payer's reimbursement payment is due and owing, and if not made within 60 days, the government may bring an action for double damages against it. 42 U.S.C. § 1395y(b)(2)(B)(iii), (3)(A). Upon a judgment or settlement, a beneficiary is positioned differently.

Under 42 U.S.C. § 1395y(b)(2)(B)(v), the Secretary may act in the best interest of the program and waive adjustment or recovery of a reimbursement claim "in any case where the incorrect payment has been made ... with respect to an individual who is without fault ... if such [recovery] would defeat the purposes of [the Medicare Act or the Social Security Act] or would be against equity and good conscience." (D's MSJ at 7) (citing 42 U.S.C.

§ 1395gg(c) (setting standard for waiver)). The beneficiary may also appeal the amount of the Secretary's reimbursement claim. 42 U.S.C. § 1395ff.

The decision by the Secretary denying waiver or the decision as to the amount of the reimbursement claim is made within the context of her authority to make determinations with respect to benefits under part A or part B of the Medicare program. (D's MSJ at 6–7) (citing 42 U.S.C. § 1395ff(a)(1)). The beneficiary's right to challenge a reimbursement claim includes the right to request redetermination, reconsideration, a hearing before an Administrative Law Judge (ALJ), review of an unfavorable ALJ decision before the Medicare Appeals Council (MAC), and finally judicial review of the Secretary's final decision. *Id.* at 7–8. The beneficiary initiates review by filing a request for an appeal within 120 days from receipt of the Demand Letter. (D's MSJ, Ex. 31, Attachment E at BS 305); 42 C.F.R. § 405.942(a) (filing for redetermination); 42 U.S.C. § 1395ff(a)(2)(C) (same).

The Secretary makes her decision to require immediate payment from beneficiaries, pursuant to the Debt Collection Improvement Act, which authorizes an agency to collect a debt if an individual is delinquent in its obligation to pay the government. 31 U.S.C. § 3711. " 'Administrative review of a debt will not suspend the assessment of interest, penalties, and administrative costs.' " (D's MSJ at 19) (citing 45 C.F.R. § 30.18(h)(1)). While agency review is pending, the debtor may pay the debt or be liable for interest and related charges on the uncollected debt. *Id.* "When 'agency review results in a final determination that any amount was properly a debt *and the debtor chose to retain the amount in dispute,* the Secretary shall collect from the debtor the amount determined to be due, *plus interest....* ' " *Id.*

Generally, the Secretary may suspend collections on a debt when the debtor has requested a waiver or review of the debt. 45 C.F.R. § 30.29(a)(3). Specifically, "the Secretary shall suspend collection activity during the time required for consideration of the debtor's request for waiver or administrative review of the debt if the statute under which the request is sought prohibits the Secretary from collecting the debt during that time." 45 C.F.R. § 30.29(c)(1). "If the statute does not prohibit collection activity pending consideration of the request, the Secretary may use discretion, but ordinarily will suspend collection upon a request for waiver or review *if the Secretary is prohibited by statute or regulation from issuing a refund of amounts collected prior to agency consideration of the debtor's request.*" 45 C.F.R. § 30.29(c)(2).

The MSP does not expressly suspend collection activities during the waiver or review period, but it is undisputed that the Defendant may not refund an overpayment of interest. (Order filed 11/30/09 (doc. 30) at 3 n. 1) (citing Motion to Dismiss at 27 n. 12). Consequently, it would violate section 30.29(c)(2) if she did as her letters of notice to the Plaintiffs suggest, which is charge *and collect* interest on the disputed balance remaining after 60 days, prior to resolution of the disputed reimbursement claim. She informs beneficiaries, "If the debt is not fully resolved within 60 days of the date of this letter, interest is due and payable for each full 30–day period the debt remains unresolved," *id.* at 3, and collection efforts may commence "to recover amounts you owe (including accrued interest) ...," *id.* at 3–4. In circumstances where a beneficiary seeks a waiver or appeal, interest cannot be due and owing until the debt amount is determined, pursuant to administrative and judicial review procedures. Contrary to the notices given in this case, the Secretary attests

that she suspends collection activities, upon a request for waiver or appeal. (D's MSJ at 6; Attachment 31: Minnick Declaration at ¶ 5–7.) This averment brings her conduct into line with the general practices authorized by 45 C.F.R. § 30.29(a)(3), but does not correct the notices and web site information being provided by her.

Pending resolution of the appeal, Plaintiffs argue it is unfair for Medicare to charge a beneficiary the extremely high interest rate of 11.375 percent per annum on the reimbursement claim back to the date of notice because she is precluded from paying the beneficiary the same on the portion of the disputed claim resolved in the beneficiary's favor. Normally, a debtor/claimant has the use of proceeds pending resolution of the dispute, and therefore, the debtor may pay the debt or be liable for interest and related charges on the uncollected debt. 45 C.F.R. § 30.18(h)(1). It follows, "When 'agency review results in a final determination that any amount was properly a debt *and the debtor chose to retain the amount in dispute*, the Secretary shall collect from the debtor the amount determined to be due, plus interest . . . .' " *Id.* There is no need for the Secretary to reimburse interest to a beneficiary, unless she collects the proceeds prior to resolution of the disputed claim.

■ The Court finds that the Secretary's application of the 60–day requirement to collect reimbursement claims from beneficiaries that seek a waiver or an appeal is not authorized by the statutory structure created by Congress, but the lack of an express prohibition against initiating collections and the MSP provision that interest accrue from the time of notice creates an ambiguity. Where ambiguity exists, the statutory interpretation of the agency charged with implementing it is entitled to judicial deference, *Chevron*, 467 U.S. at 844, 104 S.Ct. 2778; the second

step under *Chevron* is for the Court to consider whether the Secretary's interpretation of the law is permissible. *Zinman*, 67 F.3d at 843.

■ The Court finds that the Secretary's application of the 60–day reimbursement requirement to support immediate collection activities against beneficiaries when the reimbursement claim is in dispute is neither rational nor consistent with the statutory scheme providing for waiver and appeal rights. Her interpretation is not permissible because it unnecessarily chills a beneficiary's right to seek a waiver or to dispute the reimbursement claim and reaches beyond the fiscal objectives and policies behind the 60–day reimbursement provision.

■ Congress has ensured the fiscal integrity of the Medicare program by providing double damages against any primary payer that does not ensure she is reimbursed. Congress closed the loophole where tortfeasors settle directly with Medicare beneficiaries. She may also recover against the beneficiary. The MSP provision that interest will accrue from the notice of the settlement, 42 U.S.C. § 1395y(b)(2)(B)(ii), upon the final determination of a disputed claim, 45 C.F.R. § 30.18(h)(1), is strong incentive for beneficiaries to pay what they owe Medicare prior to expiration of the 60–day time period, leaving only the disputed portion of the claim unpaid. Because the MSP statute expressly provides for interest to be calculated from the notice of settlement, the Court finds that the Secretary's calculation of interest, is both authorized and rational. The Secretary is armed with an arsenal of powerful recovery mechanisms, such as those she threatened to launch against the Plaintiffs, such as referring cases to the Department of Justice for prosecution and the Department of Treasury for collection of offsets from Social

Security or Railroad Retirement benefits or any other monies payable to the debtor by any agency of the United States, including the Internal Revenue Service. Finally, if she fails to recover the reimbursement claim from the beneficiary, she may proceed against the primary plan, even when it has paid the beneficiary. If, as she asserts, the Secretary's conduct complies with the Court's conclusion, she need only bring her notices, manual and web site information into line with the findings of the Court.

### Recovery Actions Against Attorneys

The Secretary pursues MSP recovery actions against plaintiffs-attorneys to prevent disbursement of settlement proceeds to the beneficiary and as an alternative avenue of recovery.

The Secretary proceeds against plaintiffs-attorneys, pursuant to the same statutory authority she exercises against beneficiaries: "A primary plan, and *an entity that receives payment from a primary plan,* shall reimburse the appropriate [Medicare] Trust Fund for any payment made by the Secretary under this subchapter ... If reimbursement is not made to the appropriate Trust Fund before the expiration of the 60–day period that begins on the date notice of, ..., a primary plan's responsibility for such payment ... is received, the Secretary may charge interest (beginning with the date on which the notice ... is received) on the amount of the reimbursement until reimbursement is made...." 42 U.S.C. § 1395y(b)(2)(B)(ii)(2010) (emphasis added). The Secretary defines an "entity" as: "a beneficiary, provider, supplier, physician, attorney, State agency or private insurer that has received a primary payment." 42 C.F.R. § 411.24(g).

Having found collection activities are precluded against beneficiaries, pending resolution of waiver requests or appeals,

the same would be true as to recovery actions against attorneys. The question remains as to whether the Defendant may preclude plaintiffs-attorneys from disbursing liability proceeds to their clients until after Medicare's claim has been satisfied, or if the client fails to pay the reimbursement claim after proceeds have been disbursed, whether Medicare can recover the reimbursement claim directly from the attorney. Plaintiffs-attorneys challenge the Secretary's authority, to bring a direct action, pursuant to 1395y(b)(2)(B)(ii), to impose these requirements on them, which they argue places the attorney in ethical conflict with their Medicare clients. (Ps' MSJ at 20.)

According to the Secretary's notice to plaintiffs-attorneys, "Medicare's claim must be paid up front out of settlement proceeds before any distribution occurs." Additionally, "Medicare must be paid within 60 days of receipt of proceeds from the third party. Interest may be assessed, if Medicare is not repaid in a timely manner." (D's Memorandum in Support of Motion to Dismiss (doc. 16), Ex. 3: letter of 4/18/2007 to Van Osteen (attorney for Plaintiff Haro)). Like the Secretary's notice to beneficiaries, this notice fails by omission to address appeal and waiver rights and to explain that in such circumstances the beneficiary may choose to retain the amount in dispute until agency review results in a final determination, but will then be subject to collection for the amount determined to be due, plus interest dating back to the date of the notice.

Subsequently, the Secretary informs plaintiffs-attorneys that they have essentially the same rights and responsibilities as their clients, the beneficiaries. She writes, as follows:

This letter follows our earlier communication in which we advised you or your client that you or your client would be

required to repay the Medicare program for the cost of medical care it paid relating to you or your client's liability recovery if you or your client received money from a third party payer for a claim related to you or your client's accident/incident/injury.... We have now been advised that you or your client have received such proceeds. This means that Medicare now has a claim against these proceeds in the amount of _____ which represents Medicare's claim after reduction for procurement costs [ (attorney fees) ].... Medicare regulations require that you or your client pay Medicare within 60 days of the receipt of settlement or insurance proceeds ... The law requires that you or your client must repay an overpayment to Medicare unless [waiver] conditions ... apply to you or your client ... You or your client may appeal our decision if: you or your client disagree that you or your client have received an overpayment; or you or your client disagree with the amount of overpayment; or you or your client disagree with our decision not to waive the repayment of the overpayment.

(Amended Complaint (doc. 6), Ex. B: letter of 12/15/2008 to Plaintiff McNutt.)

The Secretary's argument is simple. She argues that the statute gives her authority to recover from any entity that has received payment from a primary plan, whether or not the attorney retains the primary payment or has passed it along to the beneficiary. (D's MSJ at 22.) Plaintiffs argue that the logical interpretation of the statute's right of reimbursement for entities that receive payments from primary plans is that it follows the money so that once settlement proceeds are released to the beneficiary, the Secretary must recover the reimbursement claim from the beneficiary. (P's MSJ at 25.)

First, the Court notes that Congress never expressly made attorneys responsible for reimbursement under section 1395y(b)(2)(B)(ii) as *"an entity that receives payment from a primary plan."* Congress originally included statutory examples of entities such as physicians or providers, 42 U.S.C. § 1395y(b)(2)(B)(ii)(2002), and in 2003, Congress omitted examples all together. In *dicta* in *Baxter,* the court noted that the Secretary's regulation reached types of entities broader than the statutory examples, which were physicians and providers, to include examples of entities that would be receiving payment under a claim of right or entitlement to retain it. *Baxter,* 345 F.3d at 906. This Court agrees with the *Baxter* court, except for the conclusion as it applies to an attorney, who retains as a right or entitlement only that portion of settlement proceeds that pay for his or her services, an attorney has no right or entitlement to retain any other portion of the settlement awarded his client. The Secretary does not pursue reimbursement from procurement proceeds and, in fact reduces her reimbursement claim "to take account of the cost of procuring the judgment or settlement." 42 C.F.R. § 411.37(a)(1). Unlike any other claim against an endpoint recipient of third-party insurance proceeds, a reimbursement claim against an attorney seeks an other "entity's" property.

Importantly, the regulation expressly provides the appropriate course of action for the Secretary: if the beneficiary or other party receives a third party payment and does not reimburse Medicare, the third party payer must reimburse Medicare even though it has already reimbursed the beneficiary. *See* 42 C.F.R. § 411.24(h) and (i)(1). Congress expressly allocated this burden to the third-party liability payer that makes its payment to a party other than Medicare when it is, *or should be,* aware that Medicare has made

a conditional payment. *Id.* at § 411.24(i)(2).

The Court has found no case which has considered the propriety of direct recovery actions against attorneys, pursuant to 42 U.S.C. § 1395y(b)(2)(B)(ii) and 42 C.F.R. § 411.24(g), but generally courts and litigants have presumed the correctness of the premise. In *United States v. Weinberg,* 2002 WL 32356399 (E.D.Pa. July 1, 2002), the government brought an action against an attorney to recoup Medicare payments made on behalf of one of the attorney's former clients.[4] The beneficiary, Ms. Gaither, was severely injured in an automobile accident on September 28, 1995. She was hospitalized and received care. She had a stroke on November 13, 1995. She sued and obtained a settlement of $750,000. Medicare sought reimbursement of $188,867.27. Defendant Weinberg, her attorney sent Medicare a check for $6,242.27. He argued that Medicare's reimbursement claim was primarily attributable to the stroke which was unrelated to the automobile accident and, further, only $6,242.27 of Medicare's claim was not time barred.

The court summarily found that "attorneys who have received settlement funds on behalf of clients who have received Medicare benefits may be subject to a direct claim by the Government." *Id.* at *3 (citing *see e.g. Denekas v. Shalala,* 943 F.Supp. 1073, 1080 (Iowa 1996) (considering whether MSP provision gives Medicare a reimbursement claim against children of beneficiary to settlement proceeds for loss of consortium)), *see also United States v. Sosnowski,* 822 F.Supp. 570 (W.D.Wis. 1993) (granting summary judgment in part for the government in recovery action against beneficiary and primary payer and both entities' attorneys, but denying, without explanation, double damages).

In *Weinberg,* the court rejected the statute of limitations argument and arguments of accord and satisfaction. *Id.* at *3–6. The court, however, denied summary judgment for the government because a fact issue existed as to the amount of reimbursement; if the stroke was not caused by the accident, Medicare could not seek reimbursement from Mr. Weinberg. *Id.* at *6. The court would not estop the attorney from arguing contrary to his vigorously argued statements of relatedness, which he had made on behalf of his client during settlement proceedings, but would allow the government to introduce his prior statements to prove a connection between the reimbursement claim and the beneficiary's accident. *Id.*

The *Weinberg* case is an example of the general incongruity created by the Secretary's interpretation of section 1395y(b)(2)(B)(ii), which requires an attorney to defend himself based on facts specific to the non-party beneficiary. Additionally, Medicare review and appeal provisions, 42 U.S.C. § 1395ff, available to the beneficiary do not apply to the attorney, *id., see also* 42 U.S.C. § 405(b)(1) (listing those who may request review of a decision regarding the rights of an individual as: the individual, a wife, divorced wife, widow, surviving divorced wife, surviving divorced mother, surviving divorced father, husband, divorced husband, widower, surviving divorced husband, child, or parent). So, if not sued by the Secretary, Mr. Weinberg could not have challenged the amount of the reimbursement claim. The *Weinberg* case also reflects general ethical problems involving the requirement that lawyers who are required to serve as witnesses in a proceeding should be excluded from participating in a case, *Lau Ah Yew v. Dulles,* 257 F.2d

---

4. The beneficiary was not named in the suit.

744, 746 (9th Cir.1958), and conflict of interest problems where an attorney representing a party is an interested party, *TWM Mfg. Co., Inc. v. Dura Corp.*, 722 F.2d 1261, 1267 (6th Cir.1983).

In this case, the plaintiffs-attorney has charged that there is a conflict of interest created between client and attorney by the Secretary's demand that he pay reimbursement claims that are incorrect or for which a hardship waiver would be appropriate. The Rules of the Supreme Court of Arizona, Rule 42, E.R. 1.3, requires an attorney to act with reasonable diligence and promptness in representing a client, to pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and to take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. It violates the rule of diligence and is not in a client's best interest, especially an elderly and disabled client with a low income, for an attorney to pay an incorrectly calculated reimbursement claim.

> E.R. 1.5 provides:
>
> (d) upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement between the client and the third person, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding the property.

The Rules of Professional Conduct provide that the lawyer has an ethical duty to protect third-party claims and to refuse to surrender property to a client when the third-party claim has become a matured legal or equitable claim. E.R. 1.5 Comment (2003 amendment), 4. Examples of unmatured legal or equitable claims are: medical bills from the client without a provider demand; unsigned, unrecorded medical liens; medical bills or a demand letter from a provider to an attorney; or knowledge that the provider treated the client for accident related injuries. Ethics Opinion 98–06, State Bar of Arizona. However, "when there are substantial grounds for dispute as to the person entitled to the funds, the lawyer may file an action to have a court resolve the dispute." Arizona Rule of Professional Conduct E.R. 1. 15, Comment (2003 Amendment), 4.

The plaintiffs-attorney argues that prior to final disposition of a disputed reimbursement claim, Medicare is not a third party entitled to receive the MSP claim because the MSP statute does not create a lien interest, but merely provides for an unperfected claim. "Defendant [does not] assert[ ] that Medicare has a lien over a beneficiary's settlement proceeds but, rather, that the statute authorizes Medicare to obtain reimbursement for the conditional payments it makes on behalf of a beneficiary from entities that receive payment from a primary plan which was responsible. And, . . ., the Ninth Circuit has explicitly held that the statute grants the Secretary an independent right of recovery against any such entity." (D's MSJ at 21–22) (citing *see Zinman*, 67 F.3d at 844–845)). The Defendant argues that because the right of recovery is not against specific property, *Zinman v. Shalala*, 835 F.Supp. 1163, 1171 (N.D.Cal.1993), she may seek recovery at any time, even after the settlement proceeds are disposed of by the attorney. She argues the statute gives her a right of recovery against the attorney, which "arises on the date notice of payment is received, and which cannot be avoided by distributing the settlement proceeds to the beneficiary. (D's MSJ at 22.)

The *Zinman* court found only that the Secretary had a direct cause of action, not just a equitable right of subrogation, against a beneficiary. The *Zinman* court did not answer the question of whether the Secretary has a direct cause of action against an attorney, arising at the time notice is received of a settlement, enforceable even if the attorney has not retained the proceeds.

At the very least, if plaintiffs-attorneys' rights and obligations are the same as beneficiaries, recovery against an attorney is subject to a final determination pending a waiver request or appeal. The Court finds no statutory support, either expressly or in the legislative history, to support the Secretary's assertion that she has a direct cause of action, pursuant to 42 U.S.C. § 1395y(b)(2)(B)(ii), to recover a reimbursement claim from an attorney that has received payment from a primary plan and has passed it along to the beneficiary. For example, Congress expressly limits the United States from recovering against a third-party plan administrator in cases where the third-party administrator would not be able to recover the amount at issue from the employer or group health plan and is not employed by or under contract with the employer or group health plan at the time the action for recovery is initiated or for whom it provides administrative services due to the insolvency or bankruptcy of the employer or plan. 42 U.S.C. § 1395y(b)(2)(B)(iii). *See Baxter*, 345 F.3d at 907 (finding escrow agent was clearly not of like kind entities, such as those receiving payment under a claim of right or entitlement to retain it, because escrow agent acts in a purely ministerial role to make payments to beneficiaries in a class action). There is no statutory authority, express or implied, to support a direct action against attorneys, except to the extent they are end-point recipients of settlement proceeds.

As the Court noted when it discussed the Secretary's interpretation of the MSP statute in respect to the beneficiary, her interpretation is not necessary to protect the fiscal integrity of Medicare. Her right of subrogation and the Rules of Professional Conduct ensure that the lawyer will retain settlement proceeds "when there are substantial grounds for dispute as to the person entitled to the funds." *See Wall v. Leavitt*, 2008 WL 4737164 *7–8 (E.D.Cal.2008) (describing 42 U.S.C. § 1395y(b)(2)(B)(iv), as providing an equitable lien which has been considered by some to be superior to all other claims). The statutory requirement that interest accrues from the point of notice ensures that an attorney, acting in the best interest of his client, will retain and pay over to Medicare the undisputed reimbursement claim.

The Court's ruling is narrow and limited to only the Secretary's asserted direct cause of action against plaintiffs-attorneys; she retains all her rights of subrogation under section 1395y(b)(2)(B)(iv) and the common law.

The Court finds that the Secretary may not collect disputed reimbursement claims from beneficiaries or their attorneys, pending resolution of waiver requests and appeals, and she may not preclude plaintiffs-attorneys from disbursing undisputed portions of settlement proceeds to their beneficiary clients. The Court rules as a matter of statutory construction and does not consider Plaintiffs' due process clause arguments.

### Conclusion, including Class Certification

According to the Plaintiffs, the issues in the case are limited to two: "first, whether defendant can require prepayment of a MSP recovery claim in cases before the correct amount is determined through the administrative appeal and waiver proce-

dures; and second, whether defendant can make plaintiffs' attorneys financially responsible if they do not hold or immediately turn over to the defendant their clients' injury compensation awards." (P's Opposition and Reply) (doc. 73) (citing Pls.' Memo at 1–2, *see also* Reply In Support Of Plaintiffs' Motion To Certify Class Action (doc 60) at 2; Second Amended Complaint (doc 37) at 10–12.) The Court has decided both issues against the Defendant and declaratory and injunctive relief will be granted for Plaintiffs, accordingly.

■ The Plaintiffs seek class certification for the plaintiffs-beneficiaries. The Court conducts a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class, *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), and has broad discretion in certifying a class, but applies class certification standards liberally, *Gary Plastic Packaging Corp. v. Merrill Lynch*, 903 F.2d 176, 179 (2d Cir.1990). The basic criteria for the certification of a class action are: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a); *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 133 (2nd Cir.2001). Additionally, one of the three elements of Rule 23(b) must also be satisfied. Fed.R.Civ.P. 23(b).

■ Rule 23(b)(2) provides for the maintenance of a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]" Fed.R.Civ.P. 23(b)(2). Here,

Defendant objects to class certification based on typicality. "If a class is certified predominantly for the purpose of providing injunctive relief, this will be less of a concern, since plaintiffs have the same interest as the rest of the proposed class in litigating the [legality of] defendant['s] [conduct]." *Dodge v. Orange County*, 208 F.R.D. 79, 89 (S.D.N.Y.2002). Given the narrow scope of the question asked by the plaintiffs-beneficiaries, it is clear the challenged policy, collection of reimbursement payments prior to resolution of waiver requests and appeals, applies across the board to all Medicare beneficiaries.

The Court certifies the class, as defined as: "persons who are or will be subject to MSP recovery, and from whom defendant has demanded or will demand payment of MSP claims before there have been determinations of the correct amounts through the waiver or appeal process." The Court certifies the class because of its obvious size, the question posed by the Plaintiffs raise common questions of fact and law as to all beneficiaries so that the named Plaintiffs' claims are typical of the claims of the class, and the class representatives will fairly and adequately protect the interests of the class members. Fed.R.Civ.P. 23(a). Because the Defendant has acted on grounds generally applicable to the class, Plaintiffs also satisfy at least one subdivision of Fed.R.Civ.P. 23(b), which is that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole . . . ."

Finally, certification is important in this case because class membership is a relevant factor in showing an immediate likelihood of future injury for the purpose of establishing plaintiffs' standing to bring this action. "Where a named plaintiff is a member of a plaintiff class, and 'members

of the class have repeatedly suffered personal injuries in the past that can fairly be traced to the [defendants'] standard practices,' the defendant's treatment of the class as a whole must be considered to determine whether the individual plaintiff[s] '[have] been and will continue to be aggrieved by the defendants' [illegal] pattern of conduct.'" *Armstrong v. Davis,* 275 F.3d 849, 864 (9th Cir.(2001)), *abrogated on other grounds,* (quoting *La Duke v. Nelson,* 762 F.2d 1318, 1326 (9th Cir. 1985)).

The Court appoints class counsel, and finds that they can fairly and adequately represent the class interests. Fed. R.Civ.P. 23(g)(1)(B).

**Accordingly,**

**IT IS ORDERED** that Plaintiffs' Motion to Certify Class Action (doc. 54) is GRANTED and Plaintiffs' counsel is appointed as class counsel.

**IT IS FURTHER ORDERED** that the class is certified and defined as follows: "persons who are or will be subject to MSP recovery, and from whom defendant has demanded or will demand payment of MSP claims before there have been determinations of the correct amounts through the waiver or appeal process."

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (doc. 64) is GRANTED.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (doc. 69) is DENIED.

**IT IS FURTHER ORDERED** that Defendant's demand for payment of her MSP reimbursement claims, under threat of collection actions before there has been a resolution of an appeal regarding the amount of the Defendant's MSP claim or a waiver request, exceeds her authority under the Medicare statute, and Defendant is enjoined from demanding payment of a MSP reimbursement claim with threats of commencing collection actions before there is a resolution of an appeal or waiver request.

**IT IS FURTHER ORDERED** that the Defendant's demand that attorneys withhold liability proceeds from clients pending payment of amounts claimed by the Defendant as MSP reimbursement exceeds her authority under the Medicare statute, and Defendant is enjoined from demanding that attorneys withhold liability proceeds from their clients pending payment of disputed MSP reimbursement claims.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter Judgment accordingly.